Acline **BLANCHARD**

v.

**AMERICAN COMMERCIAL BARGE LINE COMPANY** and Coyle Lines, Incorporated.

**Civ. A. No. 69–200.**

United States District Court, M. D. Louisiana.

June 20, 1972.

R. C. Edwins, Edwins, Cave & McKay, Baton Rouge, La., for plaintiff.

Robert M. Contois, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

E. GORDON WEST, District Judge:

This suit involves a claim for personal injuries and property damage allegedly sustained when a tug and its tow of three barges ran aground, resulting in personal injuries to plaintiff and damages to his small boat.

Plaintiff claims that on or about September 8, 1969, he had set out in his 14 foot aluminum boat, propelled by an outboard motor, in search of some wood to make a pier or wharf at his house locat-

ed in the vicinity of Bayou Long. He had proceeded into a canal which intersected with, but was not a part of the Intercoastal Waterway between Morgan City and Port Allen, Louisiana. Upon seeing a log that he wanted, he beached his boat and proceeded to cut the log preparatory to placing it in his boat. While he was cutting the log he looked up and saw the tug M/V TUSCA-LOOSA, pushing three loaded barges and two empty barges down the canal toward him. At the place where the plaintiff had beached his boat the canal made a 90 degree turn to the left where it then went out to intersect the main waterway. Mr. Boyce Johnson was the pilot in charge of the tug and tow as it proceeded down the canal. He testified that he had made a wrong turn and ended up in the canal instead of in the main waterway. By the time he realized he was in the wrong waterway he became aware of the sharp turn and knew he could not make it. He turned as sharply as he could and reversed his engines but still hit the bank at about four miles per hour. The lead barge went about 100 to 150 feet up on the bank, and in doing so struck plaintiff's boat and damaged it to the extent of $125. Thus far, the facts are quite clear and practically uncontested, but beyond this there is conflict.

Plaintiff says that when the barge came ashore it also struck a large log about 12 inches in diameter and about 10 to 12 feet long and caused the log to fall upon the plaintiff, causing him the personal injuries of which he now complains. Defendants contend that the plaintiff was in no way injured as a result of this accident. After due consideration of the evidence in this case, it is the opinion of the Court that the plaintiff did in fact sustain some damages as a result of the negligence of the pilot of the M/V TUSCALOOSA, which was owned and operated by the defendant, Coyle Lines, Inc., and that hence said defendant is indebted unto plaintiff for the sum of $5,973.65. In connection with this holding, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. On September 8, 1969, plaintiff, Acline Blanchard, left his home on Bayou Long in his 14 foot aluminum boat in search of logs with which to build a wharf. He proceeded to a canal which intersected and then turned and ran parallel to the main waterway of the Intercoastal Canal running between Morgan City and Port Allen, Louisiana, several miles north of his home. Upon seeing a log which he wanted, he beached his boat and proceeded to cut the log.

2. While he was cutting the log to size, he looked up and saw the M/V TUSCALOOSA pushing five barges coming down the canal.

3. The M/V TUSCALOOSA was owned and operated by the defendant, Coyle Lines, Inc., and at the time here in question was under the command and control of the pilot, one Boyce Johnson.

4. The pilot, Mr. Johnson, had made a mistake about seven miles up the canal, and instead of remaining in the main waterway he had turned into the canal paralleling the Intercoastal Canal.

5. At the point where plaintiff had beached his boat the canal made a 90 degree turn to the left where it proceeded then to intersect the main waterway.

6. When the plaintiff first saw the tug and its tow coming down the canal, it was about 200 feet away, but plaintiff assumed that it would turn into the main waterway.

7. As the tug and tow came closer, plaintiff realized that it was not going to negotiate the 90 degree turn and he went to his boat to try to pull it out of the path of the lead barge. The lead barge was then about 50 feet away.

8. The pilot could not make the turn and had to run aground. Plaintiff was beside his boat when the lead barge ran

aground, striking the plaintiff's boat on its port side as it did so.

9. As the barge struck the boat, the plaintiff was either hit by a flying log or was by some other means knocked down, and as a result thereof sustained an aggravation of a pre-existing injury to his back.

10. Plaintiff's boat was damaged in the amount of $125.

11. In 1966 plaintiff had sustained an injury to his back, and as a result thereof had undergone surgery for the removal of the third and fourth lumbar discs.

12. While plaintiff, who was about 57 years old at the time of this accident, had made a reasonably satisfactory recovery from the surgery and had apparently been able to engage in useful endeavors, nevertheless the medical testimony is uncontradicted to the effect that he had a very bad back and that he should not have engaged in any kind of manual labor following that surgery and up to the time of the present accident.

13. Furthermore, plaintiff had serious back problems prior to and at the time of this accident growing out of what the doctors described as advanced degenerative arthrosis and spurring of the L 3, L 4, and L 5 intervertebral disc spaces, which condition was in no way connected with the accident here complained of.

14. Dr. William L. Fisher, who performed the disc operation in June of 1966, saw the plaintiff in December, 1969, some three months after the present accident, and again in January and March of 1970. He concluded that while plaintiff complained of back pain, he saw no indication of trauma resulting from anything that happened in September of 1969. He concluded that the plaintiff had a 15 per cent disability of the body as a whole—"certainly no more," all of which he attributed to the prior surgery of 1966.

Dr. Richard Means, an orthopedic surgeon, found some tenderness in the back and found, by x-ray, an advanced degenerative arthritic condition with spurring of L 3, L 4 and L 5 vertebrae, with narrowing of the intervertebral disc spaces. He attributed none of this to the accident of September, 1969. He concluded that plaintiff had a 25 per cent disability, all of which resulted from the 1966 surgery.

Dr. G. Gernon Brown saw the plaintiff in July and August of 1970 and in June of 1971. He performed a myelogram which was negative. He found some evidence of nerve root irritation and back pain, but concluded that this was due to a degenerative arthritic condition which he concluded had been going on for a long time. His only basis of concluding that plaintiff was probably injured to some extent in the present accident was that he had apparently been doing quite well before the accident but has had complaints since. He testified that the plaintiff had a bad back before the accident and still has a bad back. He concluded that the plaintiff had no business doing manual labor before the accident, and that he has no business doing it now. He felt that the accident of 1969 may have caused some discomfort, but certainly was not the cause of his present back condition.

As opposed to this evidence of medical specialists is the testimony of Dr. Julius Daigle, a general practitioner, who has been plaintiff's family doctor for many years. He simply concludes that the plaintiff is totally and permanently disabled, and he believes the disability was caused by a ruptured disc incurred in the accident of 1969. This testimony, of course, is completely incompatible with that of the medical specialists who testified in this case.

15. From the testimony in this case, the Court finds as a matter of fact, that while the plaintiff suffered a mild aggravation of a pre-existing condition as a result of the September 8, 1969 accident, he had fully recovered from all of

the effects of that accident by July 1, 1970 at the latest, on which date Dr. Means concluded that "It is my opinion that he no longer had organic or physical disability, other than that pre-existing condition."

16. The Court finds, as a fact, that immediately prior to the accident, plaintiff was earning an average of $100 per month.

17. The Court finds, as a fact, that as a result of this accident the plaintiff suffered damage in the amount of $1,000 lost wages, $1,473.65 medical and drugs, and $3,500 pain and suffering, and that all other losses, if any, and all other medical expenses incurred, and all other pain and suffering, if any, following said accident was not a result of the aggravation of a pre-existing condition but was a result of the pre-existing condition itself.

18. The Court finds, as a fact, that the plaintiff was not guilty of any negligence contributing to the cause of this accident.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter under the Admiralty Extension Act, 46 U.S.C.A. § 740, and under the Court's general maritime jurisdiction, 28 U.S.C.A. § 1333.

2. The defendant, Coyle Lines, Inc., as owner and operator of the vessel involved in this accident, is liable for the negligent acts of the pilot employed by them to navigate said vessel.

3. The pilot of the M/V TUSCALOOSA was guilty of negligence when he failed to navigate in the proper waterway of the Intercoastal Canal and when he caused his tow to run aground.

4. The Court finds, as a matter of law, that as a result of the negligence of the pilot of the M/V TUSCALOOSA, the defendant, Coyle Lines, Inc., is indebted unto the plaintiff for the total sum of $5,973.65, as hereinbefore more specifically set forth, and judgment will be entered accordingly.